Meriwether D. HUDSON, Plaintiff,

v.

David WILHELM, Jr., Individually, and Wilhelm Company, a Colorado corporation, Defendants.

Civ. A. No. 84–K–2442.

United States District Court, D. Colorado.

Jan. 12, 1987.

Richard P. Slivka and David L. Dain, Denver, Colo., for plaintiff.

Mike McCarthy, Conover, McClearn & Heppenstall, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

### BACKGROUND .

Plaintiff contracted with defendant Wilhelm Company to invest her money in cattle and to arrange for their feeding. Defendant David Wilhelm, Jr. has been an employee of the company during the time period of plaintiff's investment relationship.

Hudson's second amended complaint states eight claims for relief: breach of fiduciary duty, violation of Colo.Rev.Stat. § 15–1–304, unauthorized trading, fraud, violation of 7 U.S.C. § 6b, respondeat superior,. vicarious liability under 7 U.S.C. § 4, and violations of registration requirements of the Commodity Exchange Act, 7 U.S.C. §§ 6d, 6k, 6m and 25(a).

Defendants have filed two separate motions in an attempt to pare down the complaint. One is for dismissal or partial summary judgment on claims one through three. The other seeks dismissal or partial summary judgment on the complaint's eighth claim.

Both parties have attached documentary evidence to their respective briefs in support of, and in opposition to, the motion on the eighth claim for relief. I therefore treat that motion as a request for summary judgment. *Clayton Brokerage Co. of St. Louis, Inc. v. Stansfield,* 582 F.Supp. 837, 838 (D.Colo.1984). I can grant the motion

only if there is no genuine issue of material fact. *Id.;* Fed.R.Civ.P. 56(c).

Defendants appended a portion of plaintiff's deposition testimony to their motion regarding the first through third claims. The excised testimony was an exhibit to defendants' argument against plaintiff's first claim. Therefore, the motion will be treated as a motion for summary judgment with respect to the first claim, and as a motion to dismiss with respect to the second and third claims. I modify my minute order of January 7, 1986 to that extent.[1]

## CLAIMS ONE THROUGH THREE

### Claim One: Fiduciary Duty

■ Defendants contend a broker owes no fiduciary duty to a customer where the account is nondiscretionary. Since plaintiff has alleged she terminated defendants' authority to trade on her behalf, and since these allegations must be taken as true for the purposes of this motion, plaintiff's account became nondiscretionary. Therefore, defendants argue, plaintiff has no legal basis on which to erect the first claim for relief.

Defendants' position is incorrect. The Colorado Supreme Court has explicitly rejected any such *per se* rule. *Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508, 517 (1986) (en banc). Instead, the supreme court has adopted a "proof of practical control" test:

[W]e hold that proof of practical control of a customer's account by a broker will establish that the broker owes fiduciary duties to the customer with regard to the broker's handling of the customer's account.

*Id.* at 517.

Moreover,

[s]ince proof of circumstances of control is necessary to elevate an ordinary broker-customer relationship to one that is fiduciary in nature, the question of whether the broker in a given case owes fiduciary duties to a particular client must be resolved on a case-by-case basis. *Id.* at 518.

■ Under *Adams*, the question whether defendants owed a fiduciary duty to Hudson must await the presentation of evidence sufficient to prove defendants' practical control over her account.[2] Thus the standard of care applicable here is the subject of genuine issues of undetermined material fact. Accordingly, I cannot grant summary judgment on plaintiff's first claim.

### Claim Two: Colo.Rev.Stat. § 15-1-304

Defendants' next importunation concerns the inappropriate nature of plaintiff's claim under the Colorado standard for investments statute, Colo.Rev.Stat. § 15-1-304. In pertinent part, that statute states:

In acquiring, investing, reinvesting, exchanging, retaining, selling, and managing property for the benefit of others, fiduciaries shall be required to have in mind the responsibilities which are attached to such offices and the size, nature, and needs of the estates entrusted to their care and shall exercise the judgment and care, under the circumstances then prevailing, which men of prudence, discretion, and intelligence exercise in the management of the property of another, not in regard to speculation but in regard to the permanent disposition of

---

**1.** The minute order characterized defendants' motions as motions to dismiss for the administrative purposes of setting a briefing schedule and accomodating defendants' compliance with Local Rules 402E and F. Moreover, as a practical matter, the procedural distinction between a Rule 12(b)(6) motion to dismiss and a motion for summary judgment under Rule 56 has no impact on the merits of my decision today. Under either rule, I must construe the allegations in plaintiff's favor. *Scheuer v. Rhodes,*

416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (dismissal); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970) (summary judgment).

**2.** In *Adams* itself this proof was not made until trial, at which time the trial judge found the evidence to be so overwhelming that he properly directed a verdict in favor of Adams. *Id.* at 519.

funds, considering the probable income as well as the probable safety of capital.

The term fiduciary, for the purposes of § 15-1-304, is defined in § 15-1-301 as "original or successor administrators, special administrators, administrators cum testamento annexo, executors, guardians, conservators, and trustees, whether of express or implied trusts." Defendants assert they are not covered by this definition. Plaintiff, dwelling on the final phrase "trustees, whether of express or implied trusts," argues to the contrary.

The Colorado courts have yet to address this issue squarely. In *Adams,* the court of appeals cited the definition of fiduciary found in § 15-1-103(2). *Adams v. Paine, Webber,* 686 P.2d 797, 800 (1983).[3] I do not find that statute to be relevant here.[4] However, the court of appeals also wrote: "When acting within a fiduciary capacity, a person fills an office of trust and is held to the high standard of duty required by a trustee." *Id.* at 800. In support of this proposition, the appeals court cited *Hudson v. American Founders Life Insurance Co.,* 151 Colo. 54, 377 P.2d 391 (1962). There, the Colorado Supreme Court invoked a section of the Restatement (Second) of Trusts (1959) as providing "a good statement of the rule on the measure of damages in an action against a fiduciary." *Hudson,* 377 P.2d at 395.

The *Adams* court of appeals also cited the Missouri case of *Roth v. Roth,* 571 S.W.2d 659 (Mo.App.1978). The *Roth* court observed that a fiduciary relationship between a broker and a customer is "in the nature of a trust." *Id.,* 571 S.W.2d at 668, quoting portions of 12 Am.Jur.2d *Brokers* §§ 96, 113 (1964); and 12 C.J.S.2d *Brokers* § 5 (1980). In pertinent part, § 113 states "[i]n some respects a stockbroker has been described as a trustee." The other legal encyclopedia is even more explicit:

> In so far … as he [the broker] is employed, in the course of the transaction, to act as agent for one of the parties his relationship with such party or customer is essentially fiduciary and confidential in character, as in the case of a stockbroker or a real estate broker employed to purchase or sell property for his customer. Under such circumstances, *the broker's obligations are as exacting as those imposed on a trustee in favor of his beneficiary,* . . . .

12 C.J.S. *Brokers* § 5 (emphasis added).

Finally, reference to the Restatement (Second) of Trusts is instructive. Section 3(3) of the Restatement defines a trustee as "the person holding property in trust." A trust is in turn defined as "a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." *Id.,* § 2. Section 227 of the Restatement defines the investments which a trustee may make. In applicable part, that section states:

> In making investments of trust funds the trustee is under a duty to the beneficiary (a) in the absence of provisions in the terms of the trust or of a statute otherwise providing, to make such investments and only such investments as a prudent man would make of his own property having in view the preservation of the estate and the amount and regularity of the income to be derived.

The Restatement mirrors Colorado trust law. For example, a Colorado trust, in its simplest form, is "that relation between two persons by virtue of which one of them

---

**3.** The court of appeals was affirmed by the supreme court in *Paine, Webber v. Adams,* 718 P.2d 508.

**4.** The definition of fiduciary found in § 15-1-103(2) specifically applies to part 1 of article 1 of title 15, Colo.Rev.Stat. §§ 15-1-101 through 15-1-113. Part 1 is distinct from part 3, which is composed of §§ 15-1-301 through 15-1-306.

Part 3's definition of fiduciary is housed in § 15-1-301. Part 3 also contains the statute which gives rise to plaintiff's second claim, namely § 15-1-304. Therefore, I do not find § 15-1-103(2) to be controlling on plaintiff's second claim. Rather, I find § 15-1-301 to pose the relevant standard.

holds property for the benefit of the other." *Cree v. Lewis*, 49 Colo. 186, 112 P. 326, 327 (1910). This definition parallels § 2 of the Restatement. Similarly, Restatement § 227 corresponds to Colo.Rev. Stat. § 15-1-304.

■■■ This legal survey leads me to conclude § 15-1-304 was not intended by the legislature to be interpreted *expressio unius est exclusio alterius*. The statute is a codification of common law trust principles. The authorities cited clearly demonstrate that a fiduciary is held to a trustee's standard of care. Since, under the supreme court's *Adams* formulation, a broker may be cast in the role of a fiduciary, a broker may also be held accountable for breach of the duties enumerated in § 15-1-304.

In effect, plaintiff's second claim for relief is nothing more than a statement of the duty of care applicable if plaintiff's first claim is substantiated. Section 15-1-304 pre-supposes the existence of a fiduciary relationship. That relationship can only be established under the first claim, because *Adams* dictates the issue to be one of fact fit only for case-by-case determination. Therefore, the second claim is dependent on the outcome of the first claim. Accordingly, the second claim will not be dismissed.

*Claim Three: Unauthorized Trading*

■■ Defendants object to Hudson's third claim because "Colorado courts have not recognized an action for unauthorized trading." Defendants' Brief at 6. Plaintiff concedes "there is no common law cause of action denominated as 'unauthorized trading.'" Plaintiff's Brief at 9. "The essence" of this claim, continues plaintiff, is the tort of conversion. *Id.* at 9–10. Additionally, plaintiff states the third claim "should suffice to establish a claim for negligence in following plaintiff's trading instructions, or alternatively, for breach of the express instructions of plaintiff and agreement of defendants to honor those instructions." *Id.* at 10.

The rules of pleading under the Federal Rules of Civil Procedure are liberal, 5 Wright & Miller, *Federal Practice and Procedure:* Civil § 1215 (West 1969), but the pleadings must still "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.*, quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). Plaintiff wistfully hopes to use its third claim as some type of catch-all claim for relief, mixing tort and contract. In Colorado, however, tort and contract remain separate doctrinal regions of the law. *See, e.g., Strey v. Hunt International Resources Corporation*, 749 F.2d 1437, 1441 (10th Cir.1984), *cert. denied*, —— U.S. ——, 107 S.Ct. 237, 93 L.Ed.2d 162 (1986) (Colorado law does not recognize an independent tort action for breach of contractual duties). As interpreted by its own drafter, the third claim is now so vague and ambiguous that I cannot reasonably require defendants to pose a responsive pleading to that claim. Fed.R.Civ.P. 12(e). The third claim is dismissed.

## MOTION ON CLAIM EIGHT

The eighth claim for relief is premised on allegations that defendants have violated 7 U.S.C. §§ 6b, 6k, and 6m by failing to satisfy certain registration requirements under the Commodity Exchange Act. Plaintiff seeks to enforce the alleged registration violations through 7 U.S.C. § 25, which creates a private right of action.

A dispute exists over defendants' registration status during the time periods relevant to this action. Indeed, the issue is the subject of plaintiff's pending motion for discovery sanctions. The magistrate has heard oral argument on that motion and has taken the matter under advisement. Thus the registration issue presents an outstanding genuine issue of material fact.

Defendants, however, also contend plaintiff has failed to allege a causal relationship between any failure to fulfill registration requirements and any injuries sustained. Thus even assuming one or both defendants have not been properly registered, defendants claim dismissal of the eighth claim is required. Under this argu-

ment, the factual controversy over defendants' registration status will not prevent entry of summary judgment.

Defendants' argument essentially posits plaintiff has not, and cannot, draw any link between plaintiff's losses on the market and any failure on defendants' part to comply with the registration rules. Plaintiff, in response, has interposed a three point rebuttal. Plaintiff first claims "it is not, by any means, a settled rule of law that causation ... is a necessary element for any action premised on the registration requirement under the Act." Plaintiff's Brief at 5. Plaintiff notes defendants have cited cases decided under pre–1982 law. Since the Commodity Exchange Act was amended in 1982[5] to add 7 U.S.C. § 25(a)(1), plaintiff finds these cases paint an incomplete picture, at best.

Plaintiff also invokes policy: "Even assuming that a showing of causation is required under § 25 of the act, strong policy considerations support the proposition that such a causation requirement be considerably broader than that defined by defendants." Plaintiff's Brief at 7.

Finally, plaintiff claims to have already made sufficient allegations of causation in ¶ 64 of her second amended complaint. That paragraph states: "As a proximate result of the commission of all of the foregoing actions while not having been registered as required under the CFTA [Commodity Exchange Act], plaintiff has suffered damages as alleged herein."

For reasons unknown to me, neither party has adverted to the language of the statute itself. The statute, however, is the primary, if not sole, source of controlling law. In applicable part, 7 U.S.C. § 25(a)(1) states:

**§ 25 Private rights of action**

**(a) Actual damages; actionable transactions; exclusive remedy**

(1) Any person ... who violates this chapter [chapter 1, the Commodity Exchange Act] shall be liable for actual damages resulting from one or more of the transactions referred to in clauses (A) through (D) of this paragraph *and caused by such violation* to any other person—

(A) who received trading advice from such person for a fee;

(B) who made through such person any contract of sale or any commodity for future delivery ... or who deposited with or paid to such person money ... in connection with any order to make such contract;

(C) who purchased from or sold to such person or placed through such person an order for the purchase or sale of—

(i) an option subject to section 6c of this title ...;

(ii) a contract subject to section 23 of this title; or

(iii) an interest or participation in a commodity pool; or

(D) who purchased or sold a contract referred to in clause (B) hereof if the violation constitutes a manipulation of the price of any such contract or the price of the commodity underlying such contract. (Emphasis added)

■ The emphasized portion of the statute clearly indicates the violation must cause the actual damages alleged. Thus plaintiff's first argument is without foundation. Plaintiff's policy argument about the relative stringency of the causation requirement does not subvert this conclusion. While the causation requirement of § 25 may be met more easily than defendants imagine, it is still a requirement which plaintiff must satisfy. Moreover, plaintiff's policy arguments are premised on pre-amendment cases. Plaintiff herself has announced the dubious precedential value of such cases in light of the statute's metamorphosis.

■ Plaintiff's last argument is also unavailing. Reliance on ¶ 64 of the complaint is insufficient to rebut arguments raised on a motion for summary judgment. Under Fed.R.Civ.P. 56(e), "an adverse party may not rest upon the mere allegations

---

**5.** The notes to 7 U.S.C.A. § 25 indicate addition in January, 1983.

or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

To avoid procedural unfairness, however, in holding plaintiff to Rule 56 when the parties apparently assumed Rule 12 applied,[6] and in spite of its confusing rhetoric, I will examine plaintiff's additional causation argument. Plaintiff contends causation "is clearly present, since plaintiff would have never permitted the defendants to illegally trade on her account if she had known that the defendants were not properly registered in commodities futures." Plaintiff's Brief at 9.

Plaintiff seems to be arguing a "but for" type of causation in this sentence. Had she known of the registration deficiencies, she would not have allowed defendants to trade on her account. Hudson Deposition at 14 (Exhibit A to Plaintiff's Brief). This argument, however, tacitly concedes plaintiff's monetary losses are not themselves the direct result of defendants' registration improprieties. Instead, plaintiff argues she never would have incurred the losses in the first place because, had she known of the registration problem, she would not have permitted defendants to handle her money at all.

The legal import of this argument is to transform the eighth claim for relief into a claim for misrepresentation.[7] Plaintiff is not alleging her monetary losses were caused by defendants' failure to register properly. Rather, she is contending her pecuniary damages were occasioned by defendants' *concealment* of possible registration problems. Thus, the eighth claim for relief posed by plaintiff's brief is a marked alteration of the claim originally stated in her second amended complaint. Plaintiff has again sought to transform her pleadings by way of explication in briefing. Her eighth claim is legally deficient.

**6.** *See* note 1.

In accordance with the foregoing, IT IS ORDERED that defendants' motion to dismiss or for partial summary judgment on plaintiff's first, second, and third claims is denied in part and granted in part. The third claim is dismissed. Claims one and two remain intact. IT IS FURTHER ORDERED that defendants' motion to dismiss or for partial summary judgment on plaintiff's eighth claim is granted. The eighth claim is dismissed.

**7.** Plaintiff has already stated fraud claims in her fourth and fifth claims for relief, but on different grounds.