UNITED STATES of America, Plaintiff,

v.

Richard T. MARCHESE, Orville Leroy Sandberg, David R. Nemelka and Laura Lee Sorenson, Defendants.

Crim. A. No. 93–CR–008.

United States District Court,
D. Colorado.

Dec. 7, 1993.

Kenneth Buck, Gerald Rafferty, Asst. U.S. Attys., Denver, CO, for U.S.

Joseph Saint–Veltri, Leonard Davies, Denver, CO, for Marchese.

John H. Schlie, Cross, Schlie and Heckenbach, Englewood, CO, for Sandberg.

Steven L. Waters, Martha Bohling, Robinson, Waters, O'Dorisio and Rapson, P.C., Denver, CO, for Nemelka.

David Kaplan, Pozner, Hutt & Kaplan, Denver, CO, Loren E. Weiss, Purser Okazaki & Berrett, Salt Lake City, UT, for Sorenson.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendants Richard T. Marchese (Marchese), Orville Leroy Sandberg (Sandberg), David R. Nemelka (Nemelka) and Laura Lee Sorenson (Sorenson) move to dismiss the indictment. These motions are adequately briefed and oral argument was held December 3, 1993. For all the reasons set forth below, defendants' motions will be denied.

The indictment charges Nemelka, Sandberg, and Marchese with mail fraud and money laundering. Sorenson is charged with mail fraud. Mail fraud, under 18 U.S.C. § 1341, prohibits "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretense or promises".

The defendants contend that the indictment should be dismissed pursuant to *McNally v. U.S.*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) and Fed. R.Crim.P. 12(b)(2). They argue that the mail fraud scheme is charged on the theory that the defendants deprived Power Securities' (Power) customers of their right to honest and faithful service and, thus, the mail fraud charges are insufficient under *McNally* and must be dismissed.

The government contends that its theory of this case, as set forth in the indictment, is that Nemelka paid kickbacks from the sale of the controlled securities to Marchese and Sandberg. The government further contends that these kickbacks violated Marchese's and Sandberg's fiduciary duty to Power's customers and that these acts are attributable to Nemelka and Sorenson because they were co-schemers. Based on the government's theory of the case, the indictment is sufficient to withstand the defendants' motions to dismiss.

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against him which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. U.S.*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *U.S. v. Mobile Materials, Inc.*, 871 F.2d 902, 906 (10th Cir.1989). Thus, the focus of my inquiry here is whether under the government's theory the mail fraud charges are sustainable because a property right of Power's customers was taken or placed at risk as a result of the alleged fraudulent scheme. If no property right was involved, the mail fraud charges cannot survive.

The Supreme Court, in *McNally*, held that a scheme defrauding state citizens of their intangible rights to honest and impartial government did not constitute mail fraud under 18 U.S.C. § 1341. *McNally*, 483 U.S. at 356–57, 107 S.Ct. at 2879–80. The *McNally* Court noted, however, that the mail fraud statute clearly protects property rights. *Id.* at 356, 107 S.Ct. at 2879–80. In *Carpenter v. U.S.*, 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), the Supreme Court clarified McNally by upholding a mail fraud conviction, recognizing that confidential business information—an intangible interest—constituted property and, therefore, came within the statute's purview. *Carpenter*, 484 U.S. at 28, 108 S.Ct. at 322. The Court declared: "*McNally* did not limit the scope of § 1341 to tangible as distinguished from intangible property rights." *Id.* at 25, 108 S.Ct. at 320.

■ Later cases construing *Carpenter* hold that shareholders have property interests. *See, e.g., U.S. v. Wallach*, 935 F.2d 445, 462 (2d Cir.1991). The purchase and sale of stock involves a property interest. *Id.* Furthermore, the deprivation of economically material information, such as kickbacks, implicates a property interest and can provide the basis for a mail fraud prosecution. *See generally, Id.* at 463; *U.S. v. Richerson*, 833 F.2d 1147, 1156–57 (5th Cir.1987). Thus, to sustain the mail fraud charges here, the indictment must allege that the funds for the kickbacks came from or was intended to come from the purchase or sale of securities to Power's customers. *See generally, U.S. v. Levine*, 750 F.Supp. 1433 (D.Colo.1990).

Although the Tenth Circuit has not yet addressed the application of the mail fraud statute to those receiving kickbacks from the sale of stock, the Second Circuit, in a *pre-McNally* case, held that the mail fraud statute is violated when "a fiduciary fails to disclose material information which he is under a duty to disclose under circumstances where the non-disclosure could or does result in harm to another." *U.S. v. Weiss*, 752 F.2d 777, 784 (2nd Cir.), *cert. denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 285 (1985); *accord U.S. v. Dial*, 757 F.2d 163, 168 (7th Cir.), *cert. denied*, 474 U.S. 838, 106 S.Ct. 116, 88 L.Ed.2d 95 (1985).

■ In this case, the indictment alleges, among other things, that the defendants devised a scheme to defraud Power's customers of their money and property. Indictment, ¶¶ 1, 19, and 24. It alleges that Power's customers were induced to become customers when told they would come first, and that Power would not make money at their expense. Indictment, ¶ 24. The indictment further alleges that the defendants:

> engaged in an unlawful scheme to defraud Power's customers of their money and property by inducing those customers to purchase and sell penny stocks through the use of materially false or misleading statements or omissions ... [and] the defendants failed to disclose that Nemelka secretly controlled those stocks and Nemelka was paying kickbacks to Marchese,

Sandberg and others to retail Nemelka-controlled securities. Indictment, ¶ 19.

At ¶ 25, the indictment states:

As part of said scheme, Marchese, Sandberg and others acting at the defendants' direction instructed the brokers at Power to recommend the purchase and sale of securities which were secretly controlled by Nemelka.... As consideration for Power purchasing and selling Nemelka-controlled securities, Nemelka agreed to secretly pay Marchese, Sandberg, ... kickbacks from the sale of the securities ...

Here, the mail fraud charges survive the defendants' challenge under *McNally* because a property right, the purchase and sale of stock by Power's customers, was placed at risk by the alleged fraudulent scheme. Furthermore, the kickbacks, which Nemelka allegedly paid to Marchese and Sandberg, came from the sale of securities to Power's customers. In addition, Marchese and Sandberg, as Power's co-owners and directors, had a fiduciary responsibility to disclose material information (the alleged kickbacks) to their customers. The failure to make such disclosure, assuming it was material, further supports the alleged mail fraud violations. *See generally, Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 153, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972); *cf. Hudson v. Wilhelm*, 651 F.Supp. 1062, 1066 (D.Colo.1987) (a broker is a fiduciary); *Paine, Webber, Jackson & Curtis Inc. v. Adams*, 718 P.2d 508, 515 (Colo.1986) (a stockbroker has a duty to serve a customer's financial interest).

 Defendants Nemelka and Sorenson further challenge the indictment's sufficiency on the grounds that it fails to assert that they made any false representations to Power's customers, the center of the alleged scheme to defraud. This argument fails because Nemelka and Sorenson are accountable for all acts of their alleged co-schemers in furtherance of the scheme. Conspiracy doctrines apply to multi-member mail fraud schemes even if the indictment does not formally charge conspiracy. *U.S. v. Wormick*, 709 F.2d 454, 461 (7th Cir.1983). Once a defendant is implicated in a scheme, he is liable for all the acts of his co-schemers.

*U.S. v. Funt*, 896 F.2d 1288, 1294 (11th Cir. 1990); *see also Wormick*, 709 F.2d at 461 (once defendant becomes a party to the scheme, he is accountable for mailings caused by other members, whether or not he knew of or agreed to any specific mailing).

Here, the indictment alleges that Nemelka and Sorenson were involved in a scheme to defraud Power's customers. Indictment ¶ 19. Therefore, Nemelka and Sorenson are accountable for all acts of their alleged co-schemers in furtherance of the scheme. Since the alleged scheme includes Marchese and Sandberg inducing Power's customers to purchase and sell stocks as a result of materially false or misleading statements or omissions, such acts are attributable to Nemelka and Sorenson.

Because the *McNally* holding is inapplicable here and because the acts of Marchese and Sandberg are attributable to Nemelka and Sorenson, the indictment sufficiently contains all of the elements necessary to sustain the charges against the defendants. Furthermore, the indictment fairly and adequately informs the defendants of the charges for which they must defend and guards against any double jeopardy risk. Accordingly, their motions to dismiss the indictment will be denied.

 Defendant Marchese independently argues that the indictment fails to state a crime under Fed.R.Crim.P. 7(c)(1) and, thus, it must be dismissed. Marchese first contends that the indictment is defective because it fails to allege that he or his company was legally bound to disclose the fact that he was receiving kickbacks from the sales of securities. The indictment alleges that Marchese was the owner and director of Power Securities; that the defendants engaged in an unlawful scheme to defraud Power's customers of money and property by inducing them to purchase and sell stocks through materially false or misleading statements; that the false statements· concerned brokers selling certain stocks to Power's customers while assuring them that Power had their best interests in mind; and that Nemelka agreed to secretly pay Marchese kick-

backs from the sale of the securities. Indictment ¶¶ 2, 19, 24, and 25.

In light of these allegations, the indictment sufficiently alleges all of the elements of mail fraud necessary to sustain the indictment. The indictment need not specifically allege that Marchese breached his fiduciary duty to his customers. Moreover, the legal obligation to disclose such kickbacks to his customers is implied. Furthermore, Marchese's argument rests, at least in part, on factual questions which must be determined by the trier of fact and which are inappropriate to support a motion to dismiss i.e. whether Marchese and Sandberg breached their fiduciary duty to Power's customers and whether the kickbacks constituted material information such that Marchese and Sandberg had a duty to disclose this information.

██ Marchese also argues that the indictment is defective because it fails to allege that his customers were injured by his receipt of "undisclosed fees". This argument lacks merit because a victim's actual loss as a result of a scheme is not an essential mail fraud element. *U.S. v. Stewart,* 872 F.2d 957, 960–61 (10th Cir.1989). Moreover, the indictment alleges that the kickbacks came from the sale of the securities. Indictment ¶ 25. Marchese further contends that the indictment fails to allege that the payment of "fees" were inimical to his customer's interests. In light of the other allegations in the indictment, this argument fails as well.

Marchese final argument is that the indictment is insufficient because it merely tracks statutory language without alleging particular elements of an offense. This argument is similarly without merit. Read as a whole, the indictment alleges each of the elements of mail fraud and sets forth the mail fraud scheme in sufficient detail. Indictment, ¶¶ 2, 19, 24, 25 and 39.

██ Marchese's challenge to the sufficiency of the money laundering charges also fails. In *U.S. v. Alford,* 999 F.2d 818 (5th Cir.1993), as in this case, the court upheld an indictment where it tracked the language of the money laundering statute, identified the specified unlawful activity as mail and wire fraud, and described specific financial trans-

actions associated with each count. *Id.* at 822–23. Because the indictment here contains similar detail, Marchese's motion to dismiss the indictment will be denied.

Accordingly, IT IS ORDERED THAT the defendants' motions to dismiss the indictment are DENIED.